UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY SPENCER,

    *Plaintiff*,

v.                                      CASE NO. 2:14-CV-11343-LPZ-PTM

MICHIGAN DEPARTMENT        DISTRICT JUDGE LAWRENCE P. ZATKOFF
OF CORRECTIONS, DANIEL        MAGISTRATE JUDGE PATRICIA T. MORRIS
HEYNES, MICHAEL MARTIN,
DAPHNE JOHNSON, PAUL KLEE,
S. CAMPBELL, S. SCHOOLEY,
K. MCCONNELL, B. EVERS,
GALLUP, KAST, RANDALL,
EICHENBURG, SISSEN,
THOMPSON, and JOHN DOE 1-2,

    *Defendants*.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

For the reasons stated below, I recommend that:

1. Defendants' motion for summary judgment (Doc. 30) be **GRANTED**, and

2. Plaintiff's motion for preliminary injunction (Doc. 34) be **DENIED**.

**II.    REPORT**

    **A.    Introduction and Procedural History**

This case was referred to Magistrate Judge Patricia T. Morris, *see* 28 U.S.C. § 636(b)(1)(B); E.D. Mich. LR 72.1(b)(3), for resolution of all pretrial matters on May 1, 2014. (Doc. 21.) Plaintiff is a *pro se* prisoner currently incarcerated at the Michigan Reformatory ("RMI"), in Ionia, Michigan. The events that gave rise to the allegations in the Complaint

occurred while Plaintiff was incarcerated at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan.

Plaintiff's verified complaint alleges various claims and although Plaintiff did not number the claims, this report will do so for ease of reference: (1) a civil conspiracy under 42 U.S.C. §1983, for the concerted efforts of Defendants McConnell, Eichenburg, Kast, Thompson, John Doe 1 and 2, Randall, Gallup, Campbell, Evers, Sissen, and Klee to retaliate against Plaintiff in violation of his First Amendment rights (Doc. 1 at 14); (2) violation of his Eighth Amendment rights when Defendants McConnell, Eichenburg, Kast, Thompson, John Doe 1-2, Randall, Gallup, Campbell, Evers, and Sissen were deliberately indifferent to his safety and used excessive force by labeling him a snitch and by conducting harassing patdowns, cell searches, and threatening and intimidating him (*id.*); (3) that Defendants Evers and Campbell also violated his Eighth Amendment rights by refusing Plaintiff's request for protection after he was stabbed and issuing him misconducts when he refused to return to his housing unit (*id.*); (4) that Defendants McConnell, Campbell, Evers, Sissen, and John Doe 2 violated his Eighth Amendment rights by confining him in the "HSB cage" for nine days without a mattress, bedding, medication, regular access to a toilet, and where he was mentally and physically tortured (*id.*); (5) violation of his due process rights under the Fourteenth Amendment against Defendants McConnell, Eichenburg, Randall, Evers, and Schooley for conducting a disciplinary hearing without Plaintiff being present and despite the fact that Defendant Evers was not impartial, and for Defendant Schooley's affirming the decision of Defendant Evers (Doc. 1 at 14-15); and (6) a First Amendment violation claim, a due process claim, an equal protection claim, and a claim under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against Defendants McConnell, Eichenburg, Klee,

2

Heynes, Martin, Johnson, and the Michigan Department of Corrections ("MDOC") for preventing him from receiving visits from Minister Corrigan or any other qualified member of the clergy. (Doc. 1 at 15.) Plaintiff seeks injunctive relief and compensatory and punitive damages, as well as costs and fees. (Doc. 1 at 15-16.) Plaintiff also filed a motion for a preliminary injunction with regard to his claim that certain Defendants prevented him from receiving visits from Minister Corrigan, so that claim will be considered under the motion for injunctive relief analysis. (Doc. 34.)

On August 14, 2014, Defendants moved for summary judgment. (Doc. 30.) Plaintiff's original response was stricken but a motion to amend/correct was granted on November 17, 2014 (Doc. 39) allowing Plaintiff's amended brief, as attached to his request, (Doc. 38), to be accepted as his response to Defendants' motion for summary judgment. (Doc. 39.) In addition, the Court ordered pages electronically transferred from his stricken response to his request/response (Doc. 38) because of the extreme burden refiling would place on the incarcerated Plaintiff. (Doc. 39 at 2.) On October 17, 2014, Plaintiff filed a motion for preliminary injunction (Doc. 34) and Defendants responded on October 30, 2014. (Doc. 37.) Accordingly, these two motions (Doc. 30 and Doc. 34) are ready for report and recommendation, without oral argument, under Local Rule 7.1.

    **B.**    **Defendants' Motion for Summary Judgment (Doc. 30)**

    1.    **Exhaustion**

        *a.*    *Standards*

Congress passed the Prison Litigation Reform Act of 1995 ("PLRA") "in response to a sharp rise in prisoner litigation in federal courts." *Woodford v. Ngo*, 548 U.S. 81, 83 (2006). By passing the PLRA, Congress attempted to ensure that "the flood of nonmeritorious [prisoner

3

civil rights] cases [did] not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 202 (2007). Congress equipped the PLRA with several mechanisms designed to reduce the quantity and increase the quality of the claims that came to federal court. *Id.* A "centerpiece" of the PLRA was the "invigorated" exhaustion requirement: "No action shall be brought with respect to prison conditions under § 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2000); *see also Woodford*, 548 U.S. at 84 ("A centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an 'invigorated' exhaustion provision." (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Courts consider the PLRA's suits "brought with respect to prison conditions" to include "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The *Woodford* Court held that the PLRA's exhaustion of administrative remedies requires (1) that no remedies currently remain available, and (2) that the remedies that had been available to the prisoner were "properly" exhausted. 548 U.S. at 93. Prior to *Woodford* there were conflicting interpretations of the PLRA's exhaustion requirement. Some circuits interpreted the exhaustion requirement to mean that plaintiffs must have no more administrative remedies available before bringing their cases to federal court. *Id.* Others interpreted it to mean that plaintiffs must have "properly" exhausted their available remedies by following the agency's procedural requirements such as "deadlines and other critical procedural rules." *Id.*

4

In finding that exhaustion of remedies required "proper" exhaustion, the Court was persuaded by the "striking[]" similarities between the language of the PLRA and the doctrine of exhaustion in administrative law. *Id.* at 102. It also considered the purposes behind the exhaustion requirement, reasoning that an interpretation that did not require proper exhaustion would render the PLRA "toothless"–enabling a prisoner to bypass prison remedies by simply disregarding or ignoring deadlines. *Id.* at 95. "Proper exhaustion" means that the plaintiff complied with the administrative "agency's deadlines and other critical procedural rules." *Id*. at 90. Complaints and appeals must be filed "in the place, and at the time the prison's administrative rules require." *Id.* at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

In *Jones*, the Court instructed us to look to the prison's policy itself when determining "whether a prisoner has properly exhausted administrative remedies–specifically, the level of detail required in a grievance to put the prison and individual on notice of the claim." 549 U.S. at 205, 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the *prison's requirements*, and not the PLRA, that define the boundaries of proper exhaustion." (emphasis added)). Specifically, the *Jones* Court was determining whether a plaintiff needed to identify the defendant by name during the initial grievance process. Since the MDOC's policy at the time did not require that level of specificity, the Court did not find that the PLRA required it. *Id.* However, the current MDOC policy requires this level of specificity.

A plaintiff does not need to show proper exhaustion as a part of their complaint. *Jones*, 549 U.S. at 216. Rather, failure to properly exhaust remedies is now an affirmative defense. *Id.*

    **b.**    ***MDOC policy***

5

The MDOC provides prisoners with a grievance procedure for bringing forward their concerns and complaints. *See* MDOC Policy Directive ("PD") 03.02.130 (eff. July 9, 2007). The MDOC's grievance procedure consists of steps that a prisoner must follow prior to filing a complaint in court, and each step is accompanied by a time limit. First, the grievant must attempt to resolve the issue with the person involved "within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control . . . ." MDOC PD 03.02.130(P).

If the initial attempt to resolve the issue with the person involved is impossible or unsuccessful, the inmate must then submit a Step I grievance form within five days. MDOC PD 03.02.130(v). If the grievance is accepted, the prison staff is required to respond in writing to a Step I grievance within fifteen days, unless an extension is granted. MDOC PD 03.02.130(X). The policy provides the following instructions regarding the information that needs to be included in a grievance:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

MDOC PD 03.02.130(R). If the inmate is not satisfied with the response, or does not receive a response within fifteen days, he must file a Step II appeal within ten business days. MDOC PD 03.02.130(BB). Once again, if the inmate is dissatisfied with the response at Step II or does not receive a Step II response within fifteen days, he has ten business days to submit a Step III appeal to the Prisoner Affairs Section. MDOC PD 03.02.130(FF). The Step III response concludes the administrative grievance process. According to MDOC policy, a grievance is not complete until the MDOC has responded to the Step III grievance. MDOC PD 03.02.130(B), (FF), (GG).

*Woodford* and *Jones* require inmates to file grievances that conform to MDOC procedures in order to properly exhaust available remedies. 549 U.S. at 218; 548 U.S. at 93.

### c.     *Analysis and Conclusions*

Here, Plaintiff filed four grievances through Step III while incarcerated at ARF. (Doc. 30 at ID 98, Ex. B.) Defendants' concede that Plaintiff properly exhausted at least one of his claims in Grievance ARF-13-08-2512-7Z, wherein he complained about Defendant Gallup conducting a property hearing without him present. (Doc. 30 at ID 99, Ex. B at 13-18.) Therefore, Plaintiff's concomitant claim based on the fact that he was not present at the property hearing is properly exhausted.

Grievance RMI-13-09-2662-28C was rejected for raising multiple issues and for failing to speak with each staff member identified in the grievance, as well as untimeliness. The rejection was upheld at Steps II and III. (Doc. 30 at ID 98, Ex. B at 4-12.)

Plaintiff also filed ARF-13-08-2462-28A, which complained that the Security Classification Committee failed to identify the man who assaulted him and that he should not have been issued misconduct tickets for refusing to return to his housing unit. This grievance was rejected as duplicative and the rejection was upheld at Steps II and III. (Doc. 30 at ID 99, Ex. B at 19-26.)

In Grievance ARF-13-08-2461-03Z, Plaintiff complained that Defendants Campbell and Evers improperly denied his request for protective segregation and instead placed him in a caged bench area without a mattress, bedding, medication, or his property. (Doc. 30 at ID 100, Ex. D.) Since Plaintiff failed to name any other Defendants in his Step I grievance, and since Plaintiff did not mention being denied regular access to a toilet in Step I of the grievance, Defendants contend that Plaintiff did not properly exhaust his remedies as to any Defendant

7

other than Defendants Campbell and Evers, and that he did not exhaust as to any claim other than being denied protective segregation after he was assaulted and lack of bedding, medication and property while in the caged area. (Doc. 30 at ID 100-101.) I suggest that Defendants are correct.

In sum, I find that Plaintiff has failed to exhaust his administrative remedies as to all claims except claims referred to infra: (3) and (4) that he was denied protective segregation after he had been assaulted and was instead left in a caged area without a mattress, bedding, medication or his property against Defendants Campbell and Evers, and (5) his claim that he was denied due process when he was not present at his property hearing before Defendant Gallup. (Doc. 30.) I therefore recommend that all claims other than the two stated above be dismissed for failure to exhaust administrative remedies.

### 2. Merits of Exhausted Claims

As indicated above, the remaining exhausted claims are: (3) and (4) that he was denied protective segregation after he had been assaulted and was instead left in a caged area without a mattress, bedding, medication or his property against Defendants Campbell and Evers, and (5) his claim that he was denied due process when he was not present at his property hearing before Defendant Gallup. (Doc. 30.)

#### a. *Applicable Standards*

A civil rights action under 42 U.S.C. § 1983 consists of two elements: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "If a plaintiff fails to make a showing on any essential

element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

When a plaintiff is proceeding without the assistance of counsel, the court is required to liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir. 1989).

Defendants have raised the defense of qualified immunity, which "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred"; (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known"; and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

The Supreme Court has clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to

> those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (citations omitted).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

The "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment Cruel and Unusual Punishment Clause. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The inquiry incorporates objective and subjective elements into a two-pronged standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective inquiry is whether the deprivation was "sufficiently serious" and the subjective prong considers whether the state of mind of the official was sufficiently culpable. *Id.*

> b. ***Denial of Protective Segregation and Placement in a Caged Area Without Bedding, Medication or Property***

In the context of protection of prisoners, courts begin by acknowledging that "[p]risons are necessarily dangerous places; they house society's most antisocial and violent people in close proximity with one another." *Farmer*, 511 U.S. at 858. Therefore, a prison official may only be held liable where the official knows of an excessive risk to an inmate, is aware of the facts from which an inference could be drawn that a substantial risk of harm exists, and he must also draw that inference. *Id.* at 837. In the instant case, there is no allegation that such an inference was drawn. In addition, Plaintiff's request for protective custody came after he was assaulted so even if Defendants had acted on his request, it would not have prevented the assault that occurred before the request was made. Finally, no harm came to Plaintiff after he was denied protective custody; thus, he suffered no physical injury as a result of the denial and cannot state a claim based on that denial. 42 U.S.C. §1997e(e) ("No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act . . . .").

Plaintiff's alternative placement in the caged area, even with the deprivation of bedding, medication, and property, also fails to state a claim under the Eighth Amendment. Plaintiff avers that he was in the "HSB cage" for nine days, from August 15, 2013, to August 24, 2013. (Doc. 1 at ID 11.) During that time, Plaintiff alleges that he was denied his "[t]hyroid medication [which] caused Plaintiff to become very lethargic." (Doc. 1 at ID 10-11.) Plaintiff also alleges that he was denied bedding, that twice during the nine-day period his requests to go to the bathroom were delayed for so long that he urinated on the floor, and he alleges that he was only given one cup of water per prison-guard shift. (Doc. 1 at ID 10.)

Denial of bedding alone, without an allegation that the lack of bedding caused the plaintiff to be cold, suffer from hypothermia, or otherwise suffer any harm, is insufficient to

11

state an Eighth Amendment claim. *Grissom v. Davis*, 55 F. App'x 746, 758 (6th Cir. 2003) (holding that seven day deprivation of bedding did not violate the Eighth Amendment). Nor does providing him only one cup of water per prison guard shift rise to the level of an Eighth Amendment violation. *Watson v. Quarterman*, No. H-06-3260, 2008 WL 552447, at *14-15 (S.D. Tex. Feb. 27, 2008) (holding that giving protective custody inmates water once a shift did not violate the Eighth Amendment). Plaintiff's allegations that the short-term (nine-day) failure to provide his thyroid medication, which caused only lethargy, also fails to show an injury of constitutional magnitude. *Williamson v. Correctional Medical Services, Inc.* (3d. Cir. 2008) ("[L]apses in thyroid medication would not amount to a serious medical need."); *Lewis v. Sheahan*, 35 F. Supp. 2d 633, 637 (N.D. Ill. 1999) (holding that allegations that prisoner had to wait several months for thyroid test did not implicate serious medical need). It is unclear what property Plaintiff claims to be deprived of but this allegation also falls short of deliberate indifference. Accordingly, I suggest that Plaintiff has failed to state a claim of constitutional breadth. Even if Plaintiff had shown a constitutional violation, I suggest that since there is support for the notion that no constitutional rights were violated, the Defendants behaved objectively reasonably. Therefore, qualified immunity protects the Defendants from liability. *Radvansky*, 395 F.3d at 302.

### c.     *Due process–Plaintiff's Absence From Property Hearing*

Due process requires that where plaintiffs have a protected liberty or property interest, they must be provided notice, a hearing, an opportunity to present evidence, and a written statement of the reasons for any disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 555-74 (1974). Plaintiff contends that he was denied due process when he was not present at his property hearing before Defendant Gallup. (Doc. 30.) However, according to prison records,

Plaintiff was present at the hearing, where Plaintiff's grievance was found to be unsubstantiated. (Doc. 30 at ID 142.)

As noted above, where the record "blatantly contradict[s]" a party's allegations, "a court should not adopt that version of the facts" at the summary judgment stage. *Scott*, 550 U.S. at 380 (finding that videotape of police chase "utterly discredited" the plaintiff's "version of events"); *see also Coble v. City of White House, Tenn.*, 634 F.3d 865, 868-69 (6th Cir. 2011) (holding that *Scott* applied to evidence in "'the record,'" not just videotape evidence (citations omitted)); *White v. Georgia*, 380 F. App'x 796, 797-98 (finding that the plaintiff's allegations were "blatantly contradicted" by doctor's testimony). In similar contexts, courts have looked to prison records that are sufficiently inconsistent with the prisoners' allegations. For example, one court granted a defendant summary judgment where the records showed she did not attend hearings or otherwise participate in the decision to involuntarily medicate the plaintiff, despite the plaintiff's vague allegations to the contrary. *Santos v. Bush*, 874 F. Supp. 2d 408, 419-21 (D. N.J. 2012). Another court refused to credit the plaintiff's assertion that he was denied the right to call and examine witnesses at a prison disciplinary hearing because the hearing record stated he waived those rights. *Alston v. Lewis*, No. 5:10-CT-3032-FL, 2013 WL 704402, at *4 (E.D. N.C. Feb. 26, 2013); *see also Neree v. O'Hara*, No. 9:09-CV-802, 2011 WL 3841551, at *1-2, 14-16 (N.D. N.Y July 20, 2011) (finding that in light of the defendant's testimony and contemporaneous prison records, the "plaintiff's utterly inconsistent testimony . . . would not, in this court's view, create an issue of fact"), *Report & Recommendation adopted by* 2011 WL 3841553, at *1-2 (N.D. N.Y. Aug. 29, 2011).

Plaintiff does not dispute the records' authenticity. *Cf. Scott*, 550 U.S. at 378 ("There are no allegations or indications that this videotape was doctored or altered in any way, nor any

13

contention that what it depicts differs from what actually happened. The videotape quite clearly contradicts the version of the story told by the respondent . . . ."); *Kittelson v. Nafrawi*, 112 F. App'x 946, 947 (5th Cir. 2004) (finding that magistrate could not rely on police medical records to dismiss the prisoner's case where the prisoner questioned their authenticity). Thus, the prison records convincingly contradict Plaintiff's bald assertion, which consequently fails to present a material issue. Also, it was noted that Plaintiff was unavailable for interview during the later grievance process because he had been transferred to a different prison. (Doc. 30 at ID 142.) However, since Plaintiff was present at the hearing and since any further action occurred when he was no longer available at the prison, this claim fails to show a constitutional violation. I further suggest that even if any violation occurred, Defendants did not act objectively unreasonably in light of clearly established constitutional rights. Therefore, qualified immunity again protects the Defendants from liability. *Radvansky*, 395 F.3d at 302.

      **3.**     **Plaintiff's Motion for Injunctive Relief (Doc. 34)**

In connection with his RLUIPA claim, 42 U.S.C. §2000, Plaintiff moves for injunctive relief to order the Defendants "to allow plaintiff to receive clergy visits from all qualified members of the clergy, including with Minister Jenni Corrigan . . . ." (Doc. 34 at ID 203.) It should be noted that injunctive relief is the only type of relief Plaintiff could possibly be entitled to since the Sixth Circuit has held that RLUIPA does not provide monetary damages. *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014).

All of Plaintiff's visitor restrictions were removed as of August 19, 2014. (Doc. 37 at ID 625.) Accordingly, any request for injunctive relief with respect to clergy visits is now moot because the restrictions are no longer in place. *Baze v. Parker*, No. 5:11-CV-P83-R, 2013 WL 3894961, at *8 (W.D. Ky. July 26, 2013). I therefore suggest that this motion be denied.

### 4. Conclusion

For all the reasons stated above, I recommend that Defendants' motion for summary judgment (Doc. 30) be granted and that Plaintiff's motion for injunctive relief (Doc. 34) be denied.

## III. REVIEW

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

15

Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  January 23, 2015 /S PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge